# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>            v.<br><br>CHRISTIAN CEPEDA-ACOSTA,<br><br>    Defendant. | CRIMINAL NO. 17-216 (JAG) |

## OPINION AND ORDER

GARCIA-GREGORY, D.J.

Before the Court is Defendant Christian Cepeda-Acosta's ("Defendant") motion for a judgment of acquittal pursuant to Fed. R. Crim. P. 29. Docket No. 101. The government opposed the motion. Docket No. 105. For the reasons set forth below, Defendant's motion is **DENIED**.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

The Court will not rehash the entire trial here. Background information or facts will be recounted as needed in the Court's subsequent legal analysis of particular issues. *See United States v. Stierhoff*, 549 F.3d 19, 21 (1st Cir. 2008).

On March 30, 2017, a grand jury returned an Indictment charging Defendant with possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A); and possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1). Docket No. 12. On August 14, 2017, a jury trial commenced against Defendant. Docket

---

[1] The Court summarizes the key facts in the light most compatible with the jury verdict and in a manner consistent with the trial record. *See United States v. Valerio*, 676 F.3d 237, 240 (1st Cir. 2012); *United States v. Polanco*, 634 F.3d 39, 40 (1st Cir. 2011).

No. 54. At the close of the government's case, on August 16, 2017, Defendant moved for a judgment of acquittal under Fed. R. Crim. P. 29, which was denied by the Court. Docket No. 56. At the close of evidence, Defendant renewed his Rule 29 motion and the Court again denied the request. Docket No. 58. On August 21, 2017, the jury found Defendant guilty on both counts charged. Docket Nos. 61; 62. After numerous extensions of time, Defendant renewed his motion for acquittal on April 30, 2018. Docket No. 101.

## STANDARD OF REVIEW

A court may set aside a jury's guilty verdict and enter a judgment of acquittal on any offense for which the evidence is insufficient to sustain a conviction. Fed. R. Crim. P. 29. The essential question on a Rule 29 motion is whether, based on the body of proof as a whole, a reasonable factfinder could have concluded that the defendant committed the charged crime. *See Valerio*, 676 F.3d at 244; *United States v. Cruz-Rodriguez*, 541 F.3d 19, 26 (1st Cir. 2008). In answering this question, a court "take[s] into account all evidence, both direct and circumstantial, and resolve[s] evidentiary conflicts and credibility disputes in favor of the jury's verdict." *Valerio*, 676 F.3d at 244. The court does "not assess the credibility of a witness, as that is a role reserved for the jury. Nor [does it] need [to] be convinced that the government succeeded in eliminating every possible theory consistent with the defendant's innocence." *United States v. Peña-Santo*, 809 F.3d 686, 696 (1st Cir. 2015); *see also United States v. Hernandez*, 146 F.3d 30, 32 (1st Cir. 1998) (noting that "the jurisprudence of Rule 29 requires that a deciding court defer credibility determinations to the jury.") (internal citation omitted). Furthermore, "[t]he testimony of a single witness can be enough to support the government's case, and even the uncorroborated testimony of an informant may suffice to establish the facts underlying a defendant's conviction." *United States v. Trinidad-*

*Acosta*, 773 F.3d 298, 312 (1st Cir. 2014) (citation and quotation marks omitted); *see also United States v. Rivera-Donate*, 682 F.3d 120, 135 (1st Cir. 2012) (noting that "the uncorroborated testimony of a cooperating accomplice may sustain a conviction so long as that testimony is not facially incredible.") (citations and quotation marks omitted).

The First Circuit has called the sufficiency of evidence challenge "a tough sell," *Polanco*, 634 F.3d at 45; and has warned that defendants seeking acquittal on this basis "face an uphill battle," *United States v. Perez-Melendez*, 599 F.3d 31, 40 (1st Cir. 2010) (citation omitted). Accordingly, the "verdict must stand unless the evidence is so scant that a rational factfinder could not conclude that the government proved all the essential elements of the charged crime beyond a reasonable doubt." *United States v. Santos-Soto*, 799 F.3d 49, 57 (1st Cir. 2015) (citations omitted).

## ANALYSIS

I. **Count Two – Possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1).[2]**

Count Two charged Defendant with violating 21 U.S.C. § 841(a)(1), which provides that "it shall be unlawful for any person knowingly or intentionally to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." To sustain a conviction under this statute, "the government must show that [Defendant] knowingly and intentionally possessed, either actually or constructively, a controlled substance with the specific intent to distribute it." *United States v. Bobadilla-Pagan*, 747 F.3d 26, 32 (1st Cir. 2014) (quoting *United States v. Garcia–Carrasquillo*, 483 F.3d 124, 129 (1st Cir. 2007)); *see also United*

---

[2] The Court begins its analysis with Count Two since, in this case, Count One requires a conviction under Count Two.

*States v. Barnes*, 890 F.2d 545, 549 (1st Cir. 1989) ("The government need not prove actual possession; constructive possession is sufficient.") (citations omitted). Constructive possession may be established by either direct or circumstantial evidence. *Barnes*, 890 F.2d at 549. However, "mere association or mere presence with one who possessed contraband is not enough." *Id.* (citations omitted). "Both constructive possession and guilty knowledge may be inferred from a defendant's dominion and control over an area where narcotics are found." *United States v. Echeverri*, 982 F.2d 675, 678 (1st Cir. 1993) (citing *Barnes*, 890 F.2d at 549).

Defendant contends that he did not live in the property where the drugs were found, but frequently visited the property because his girlfriend lived there. Docket No. 101 at 11, 13. Defendant further argues that the government failed to establish that he knowingly possessed a controlled substance because there was insufficient evidence to show that he had dominion and control over the unit where the drugs were found. *Id.* at 6-15. The Court disagrees.

On March 25, 2017, Puerto Rico Police Department ("PRPD") officers executed a search warrant at a property located in Sardinera, Fajardo (the "Sardinera property" or the "property"). Docket No. 94 at 5, 103. The officers found Defendant, along with his girlfriend and two minor children, sleeping in one of the bedrooms at the property. *Id.* at 6-7, 43, 111-12. Upon searching the property, the officers found *inter alia* a fully loaded Glock pistol with an extended magazine on top of a kitchen cabinet; a drum magazine and 150 rounds of ammunition in one bedroom; and marijuana and drug paraphernalia[3] in a unit (the "unit") next to the garage. *Id.* at 7, 19, 31, 43-44, 47, 49-51, 63-67, 112; 95 at 44-45, 98-99, 102-105.

---

[3] This included small clear plastic bags of varying sizes, two digital scales, and a plugged heat-sealing machine. Docket No. 94 at 50-51, 63.

The evidence adduced at trial supported a reasonable inference that Defendant exercised dominion and control over the Sardinera property. The government presented evidence that, during the summer of 2014, Defendant and several owners of the Sardinera property entered into an option-to-purchase contract, allowing Defendant to occupy and live in the property without paying rent while they obtained consent from the other owners to sell the property to Defendant. Docket Nos. 98 at 32-36; 99 at 3-4; 100 at 6-8, 25-26; Gov. Exhibit 34. The agreement allowed Defendant to occupy the entire property, including the unit where the drugs were found. Docket Nos. 99 at 4; 100 at 8, 12-14. Defendant testified that the electric power and water, which supplied the entire property including the unit, were in his name. Docket Nos. 98 at 32; 99 at 4-5, 9. While he initially stated that he would stay at the Sardinera property when his daughter visited him every other weekend, he later said that in fact he slept at the Sardinera property "most of the times." Docket Nos. 98 at 39; 99 at 30. Additionally, on the day of the arrest, Defendant and his family were found sleeping in the property, and Defendant's belongings—as well as his daughter's belongings—were inside the property. Docket Nos. 94 at 6-7, 43, 111-12; 98 at 23-24; 99 at 12, 17-19.

Moreover, the evidence was sufficient to support a reasonable inference that Defendant exercised dominion and control over the unit where the drugs were found. One of the arresting officers testified that the PRPD obtained access to the locked unit by asking Defendant for the keys, at which point Defendant described the keys and indicated where they were located. Docket No. 94 at 50. Two owners of the Sardinera property testified that, on the day of Defendant's arrest, the lock on the unit was not the same lock as when Defendant moved in. Docket No. 100 at 12-13, 27. These owners also stated that they did not have access to the unit since the summer of 2014, when Defendant moved in. *Id*. From this testimony, the jury could reasonably infer that Defendant

had changed the lock to the unit after moving in, and retained access to the lock key and the unit. Additionally, Defendant admitted that he had entered the unit "several times." Docket No. 99 at 8. Consistent with this testimony, the PRPD officers found Defendant's possessions in the unit, including a firearm transfer receipt in Defendant's name and ammunition for several firearms owned by Defendant, including ammunition for the firearm Defendant kept in the kitchen. Docket Nos. 94 at 67-69, 80, 83, 97-98; 95 at 9. This evidence was sufficient to show that Defendant had constructive possession of the drugs, because he exercised dominion and control over the unit where the drugs were found.

At trial, Defendant seemed to suggest that he lost control of the property because of a February 2017 state court judgment that allegedly evicted and ordered him to leave the property within thirty days. Docket No. 98 at 37-39, 44. On the one hand, Defendant testified that, after the February 2017 judgment, he "lost control of the property," *id*. at 42-43; and that he "faced problems with the [owners] because they wanted [him] to leave the property," *id*. at 39. On the other hand, Defendant also stated that, even though he "had instructions not to be on the property," he "did not have any other option. [His] partner did not have any option. [They] couldn't move." *Id*. During the government's cross-examination of Defendant, he conceded that the February 2017 judgment actually dismissed the eviction action against him. Docket No. 99 at 46-47; *see also* Docket No. 100 at 11; Gov. Exhibit 33. Moreover, even though Defendant attested that the owners "broke the lock" to the unit door and "occupied" the unit, the lock was not broken on the day of Defendant's arrest and was, in fact, locked. Docket Nos. 94 at 50; 98 at 44. Furthermore, Defendant was found sleeping in the property, his belongings were found inside the property, and he testified that he slept there "most of the time." In his inconsistent statements and the evidence contradicting his account, the jury reasonably rejected Defendant's theory that he did not live in

or exercise dominion over the unit where the drugs, drug paraphernalia, and ammunition were found.

Accordingly, a reasonable jury crediting the government's witnesses and drawing reasonable inferences in its favor could find that Defendant exercised dominion and control over the Sardinera property, including the unit where the drugs were found. *See Echeverri*, 982 F.2d at 678 (finding "considerable evidence of dominion and control" because the defendant was the lessee of the apartment where the drugs were found, lived in the apartment, and his personal effects were scattered throughout the premises); *Barnes*, 890 F.2d at 550 (finding "substantial circumstantial evidence" of dominion and control where the defendant's loaded rifle, loaded magazine, food stamp identification card, and clothes was found in same room as the drugs); *United States v. Calle-Cardenas*, 837 F.2d 30, 32 (1st Cir. 1988) (finding that the appellant had dominion and control over apartment where he was found in shorts and shoeless along with his clothes and documents in his name). As such, the Court cannot conclude that "no level headed jury" could have found that Defendant knowingly possessed marijuana with the intent to distribute.[4]

---

[4] Defendant does not challenge the sufficiency of the evidence used to show the specific intent to distribute. However, the Court notes that this element was also met given the quantity of marijuana, the packaging method, and the drug paraphernalia found in the unit. *See United States v. Bergodere*, 40 F.3d 512, 518 (1st Cir. 1994) (finding that "both the quantity of [drugs] and the method of packaging militated toward a conclusion that appellant was himself a dealer."); *Echeverri*, 982 F.2d at 678 ("We have repeatedly held, and today reaffirm, that an intent to distribute drugs can legitimately be inferred from factors such as quantity and purity.") (citations omitted).

II.   **Count One – Possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A).**

Defendant also contends that the government failed to prove beyond a reasonable doubt that he committed a drug trafficking crime and that he possessed the firearm in furtherance of that crime. Docket No. 101 at 15-20. The Court again disagrees.

Under Count One, Defendant was convicted of violating 18 U.S.C. § 924(c)(1)(A), which applies to "any person who, during and in relation to any . . . drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm." A conviction pursuant to this statute requires a showing beyond a reasonable doubt that the defendant "(1) committed a drug trafficking crime; (2) knowingly possessed a firearm; and (3) possessed the firearm in furtherance of the drug trafficking crime." *United States v. Marin*, 523 F.3d 24, 27 (1st Cir. 2008) (citing *United States v. Delgado-Hernandez*, 420 F.3d 16, 24 (1st Cir. 2005)); *see United States v. Naranjo-Rosario*, 871 F.3d 86, 94 (1st Cir. 2017).

The "in furtherance" element requires "showing a sufficient nexus between the firearm and the drug crime such that the firearm advances or promotes the drug crime." *Marin*, 523 F.3d at 27 (citations omitted); *see United States v. Pena*, 586 F.3d 105, 113 (1st Cir. 2009). This analysis considers both objective and subjective factors:

> Objective factors the court considers include: (1) the proximity of the firearm to drugs or contraband; (2) whether the firearm was easily accessible; (3) whether the firearm was loaded; and (4) the surrounding circumstances. Evidence of subjective intent might include a showing that a defendant obtained a firearm to protect drugs or proceeds. Where direct evidence of subjective intent is lacking, the jury may infer intent from the objective circumstances.

*Bobadilla-Pagan*, 747 F.3d at 35 (citation omitted).

The First Circuit "has shown considerable latitude in determining whether a firearm was sufficiently proximate to drugs or drug proceeds or accessible to support an 'in furtherance of' conviction." *Id.* at 35-36. For example, in *United States v. Grace*, the defendant's unloaded firearm was inside a plastic bag in a drawer under the defendant's bed blocked by a duffle bag, a trashcan, and a box of books. 367 F.3d 29, 31 (1st Cir. 2004). The First Circuit affirmed the § 924(c) conviction despite the fact that no ammunition was found in the house and the drugs were found in another room. *Id.* at 31, 35-36. In *Bergodere*, police found heroin in the kitchen, a fully loaded firearm under the seat cushions of the living room sofa, and ammunition—not corresponding to the firearm found in the living room—in the bedroom. 40 F.3d at 514. The First Circuit affirmed the firearm possession conviction, concluding that "[a]s a lessee of the apartment and a person residing there, appellant had a significant degree of control over the contents of the premises." *Id.* at 519. In so finding, the court stated that "if an operable firearm is found in close proximity to a room or rooms in which drug distribution, processing, or storage occurs, then the factfinder ordinarily is free to conclude that a defendant having evident ties to the premises and the drugs knew about the gun and intended it to be available for use in relation to the narcotics enterprise." *Id.* (citation omitted).

After reviewing the record, the Court finds that the government produced sufficient evidence to support Defendant's convictions under Count One.

First, as discussed above, the government proved that Defendant committed a drug trafficking crime, namely possession with intent to distribute. *See United States v. Sherman*, 551 F.3d 45, 49 n.3 (1st Cir. 2008) (noting that "possession with intent to distribute is a drug trafficking crime" for purposes of the § 924(c) analysis).

Second, the evidence at trial was sufficient to satisfy the "in furtherance" element. The government presented evidence that the firearm was fully loaded and easily accessible. Docket No. 94 at 19, 31. The firearm and the marijuana were both found inside the Sardinera property, and ammunition for the firearm in the kitchen was found in the same unit as the drugs. *Id.* at 19, 49-51, 63, 80, 83; s*ee also United States v. Robinson*, 473 F.3d 387, 399 (1st Cir. 2007) (noting that the First Circuit has "found a sufficient nexus to exist where the drugs and firearms were not jointly located and easily accessible.") (citation omitted). Furthermore, a PRPD officer—who has worked with the DEA for fifteen years and has worked as an undercover agent in drug trafficking investigations—testified that "firearms are an essential element in drug-trafficking" used to protect the trafficking business and avoid arrest. Docket No. 95 at 82-85, 106; s*ee also Marin*, 523 F.3d at 28 (affirming § 924(c) conviction in light of the proximity between the firearm and the drugs, the accessibility of the firearm, and that "the jury also heard testimony that drug traffickers often possess firearms for protection of their trafficking activities."); *Bobadilla-Pagan*, 747 F.3d at 36 (finding evidence of subjective intent in defendant's statement that "the gun was for 'protection,' an admission which dovetails with [officer]'s testimony that drug traffickers sometimes use firearms to protect themselves, their drugs, or their profits.").

At trial, Defendant attempted to explain the presence of the firearm at the Sardinera property, testifying that he was scared for the safety of himself and his family—who were living in the property—because the owners' were "being very hostile" and telling him to leave the property after the alleged eviction. Docket No. 98 at 43-47, 49. Specifically, Defendant claimed that one of the owners, Juana Gomez, went to the property with an unknown individual, broke the lock on the unit, marked the property, and was hostile toward Defendant. *Id.* at 43-44, 47, 49. As a result, he decided to keep a weapon at the Sardinera property for protection. *Id.*

The government, however, introduced evidence contradicting this account. The jury heard evidence that the eviction action had been dismissed. Docket No. 100 at 12-13, 27. Moreover, Juana Gomez—a sixty-seven year old disabled woman—testified that she had "not even gone by" the property since 2014 and that she "had no reason to go there," except once when Defendant offered her some avocados from the avocado trees in the property. *Id.* 5, 12, 13, 20-21. In light of this evidence, the jury had sufficient grounds to discredit Defendant's proffered reasons for keeping a firearm in the Sardinera property.

Accordingly, the Court finds that a reasonable juror could find that Defendant possessed the firearm in furtherance of a drug trafficking crime.

## CONCLUSION

"[T]he law requires only that the evidence, fairly viewed, be capable of supporting the jury's verdict, not that it exclude every hypothesis consistent with a claim of innocence." *Bergodere*, 40 F.3d at 518 (citations omitted). Here, the evidence adduced at trial, viewed in the light most favorable to the verdict, was sufficient to support Defendant's convictions under both counts. Accordingly, Defendant's motion for a judgment of acquittal pursuant to Fed. R. Crim. P. 29 is hereby **DENIED**.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this Monday, July 16, 2018.

s/ Jay A. Garcia-Gregory
JAY A. GARCIA-GREGORY
United States District Judge